(Not for publication) (Docket Entry Nos. 1, 3)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
MEDFORD VILLAGE EAST :
ASSOCIATES, LLC and :
STEPHEN SAMOST, :   Civil No. 08-4803 (RBK)
:
Appellants, :   **OPINION**
:
v. :
:
MEDFORD CROSSINGS NORTH LLC, :
et al., :
:
Appellee Debtors. :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on appeal by Medford Village East Associates, LLC ("MVE") and Stephen D. Samost ("Samost") from a decision by the United States Bankruptcy Court for the District of New Jersey that the Bankruptcy Court has jurisdiction to consider the proposed Plan of Reorganization of debtors Medford Crossings North, LLC, et al. ("Appellees" or "Debtors").[1] Appellees have filed a motion to dismiss this appeal, arguing that this Court lacks jurisdiction over the appeal and that Samost lacks standing to appeal the Bankruptcy Court's order. For the reasons set forth below, the Court will deny Appellees' motion to dismiss

---

[1] The Debtors are Medford Crossings North LLC; Medford Crossings South LLC; Purple Tree One LLC; Purple Tree Two LLC; Purple Tree Three LLC; Purple Tree Four LLC; Purple Tree Five LLC; Purple Tree Ten LLC; Purple Tree Investments LLC; FC Medford Residential LLC; Medford Crossings North Urban Renewal LLC; and Medford Crossings South Urban Renewal LLC.

1

the appeal and will affirm the ruling of the Bankruptcy Court.

## I. BACKGROUND

### A. Facts

Since 1996, Appellants MVE and Samost, MVE's principal and attorney, have been involved in litigation in New Jersey state court ("the state court litigation") with Medford Township and other parties with respect to a development project ("the project"). Appellees became involved in the project approximately eight years after the state court litigation had begun.[2] Appellees Medford Crossings North, LLC ("MCN") and Medford Crossings South, LLC ("MCS") were created to purchase, hold title to, and develop portions of the project. Appellees Purple Tree Investments, LLC, Purple Tree One, LLC, Purple Tree Two, LLC, Purple Tree Three, LCC, Purple Tree Four, LLC, Purple Tree Five, LLC and Purple Tree Ten, LLC ("the Purple Tree entities") were created to sell residential rights related to the project.

In March 2005, Samost, MVE, Medford Township and the Medford Planning Board entered into a Memorandum of Understanding (the "MOU"), which set forth a modified plan for the development of the project. The MOU designated Appellees MCN and MCS as redevelopers of the project. On May 20, 2005, the parties to the litigation, MCN and MCS entered into a Stipulation. The Stipulation provided that the litigation would be deemed settled, subject to the parties' compliance with agreements to be executed pursuant to the settlement. The Stipulation also contained the following provision:

> Any and all disputes relating to this Stipulation of Settlement or any of the

---

[2] At some point, various Appellees and related entities became third party defendants in the state court litigation. The briefs submitted by the parties do not make clear precisely when and how this occurred.

> underlying agreements either attached hereto as exhibits or entered into separately pursuant to this Stipulation of Settlement shall be resolved initially as set forth in such agreement. Thereafter, any and all disputes relating in any way to this Stipulation of Settlement or any documents or agreements entered into pursuant hereto or attached as exhibits to this Stipulation of Settlement shall be resolved in a summary fashion by application to the Honorable John A. Sweeney, A.J.S.C., or in the event of unavailability, to the Honorable Ronald E. Bookbinder, J.S.C., whose decision in any such matter shall be based on the express terms of the documents and shall be final and unappealable.

(Dkt. No. 321, Ex. 1, ¶ 21.)

On April 28, 2006, certain of the Appellees, the Township, MVE and others entered into Transaction Agreements relating to the development project. These agreements included the following: (1) Agreement of Sale in Lieu of Condemnation between MVE and Township of Medford (Dkt. No. 321 Ex. 2); (2) MCN/MCS/PT Agreement of Sale between the Township of Medford and MCN, MCS, and Purple Tree Investments, LLC (Dkt. No. 45 Ex. 12); (3) Redevelopment Agreement by and Between the Township of Medford and MCN and MCS (Dkt. No. 45 Ex. 14); and (4) Agreement between MCN, MCS, Laurel Pines, LLC, and MVE (Dkt. No. 45 Ex. 16). These agreements contained summary disposition and non-appealability provisions.

In approximately August, 2007, MVE filed a Motion to Compel Specific Performance under the Transaction Agreements and/or for a Declaration of Breach. The Township filed a similar motion. While these motions were pending, a number of the Debtors and several related entities (collectively, "Freeco") filed a complaint against MVE, Laurel Pines, LLC ("Laurel Pines"), Samost, and the Township of Medford in state court. At a September 28, 2007 hearing and in an October 5, 2007 order, Judge Sweeney dismissed Freeco's complaint because it was inconsistent with the dispute resolution procedures to which Freeco had agreed. Judge Sweeney also granted the state court plaintiffs' motion for specific performance by Freeco of the

transaction agreements.  Judge Sweeney struck out, noting it was anticipatory, language in the proposed order that stated that if Freeco failed to comply with the order, it would be in breach of various agreements.  (Dkt. No. 321, Exs. 5, 6.)  On October 17, 2007, the state court granted a motion filed by the plaintiffs, including Appellants, for an Order to Show Cause with Temporary Restraints.  (Dkt. No. 45, Ex. 37.)  Also on October 17, Appellants and the other plaintiffs in the state court litigation filed a Second Amended Complaint against various Freeco entities and principals.  (Dkt. No. 278, Ex. I.)

### B. Bankruptcy Proceedings

On October 17, Appellees MCN, MCS, and the Purple Tree Entities filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  On October 23, 2007, the state court modified the Order to Show Cause, removing those parties that had filed for bankruptcy.  (Dkt. No. 45, Ex. 38.)   On October 25, 2007, the remaining Appellees filed for bankruptcy.  Shortly thereafter, Appellees removed the state court litigation to the Bankruptcy Court.  Appellants and the Township of Medford filed motions for remand, abstention and relief from the automatic stay.  The Bankruptcy Court granted the motions for abstention and remanded the state court litigation.  (Dkt. No. 129.)  The Bankruptcy Court did not grant relief from the automatic stay.

On July 11, 2008, Appellees filed their Second Amended Disclosure Statement and Plan of Reorganization.  Appellees' proposed Plan of Reorganization provides that the Third Party Releasees[3] will be released from creditors' claims which are

---

[3] The Third Party Releasees are defined as:
the Members [of the Debtors], and each of their respective principals, partners, shareholders, members, related entities, affiliates, agents, subsidiaries, successors,

4

> based in whole or in part, upon any act or omission, transaction, agreement, order, event, or other occurrence taking place on or before the Effective Date for claims or liabilities relating to, or arising from, (a) the business, operations, conduct, capitalization, funding or management of the Debtors and/or the Project, prior to the Effective Date, (b) the Project, (c) any transactions with the Debtors; (d) any transactions with the Third Party Releasees relating to the Debtors and/or the Project.

(Dkt. No. 333 at § 9.4(ii)).  The proposed Plan of Reorganization also contains an injunction provision, which provides that

> all Entities who have held, hold or may hold any claims, (as defined in Section 101(5) of the Code), Claims, Interests, liabilities or Released Claims are permanently enjoined, from and after the Confirmation Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such claim, Claim, Interest, liability or Released Claim against the Debtors, the Bankruptcy Estates, or the Third Party Releasees . . . .

(Dkt. No. 333 at § 9.2.)[4]

In June and July, 2008, Appellants filed a series of motions in the Bankruptcy Court, all of which raised the issue of the Bankruptcy Court's jurisdiction to entertain and/or approve the Debtors' proposed plan of reorganization.  Appellants argued that the Bankruptcy Court lacked jurisdiction to consider the proposed plan because of the Third Party Releases and Injunction.

---

> officers, directors, managers, employees and advisors, including without limitation, Mitchell Cohen; Carl Freedman; FC Development Group, LLC; Freedman Cohen Development LLC; Medford Crossings South Development Assoc., LLC; Medford Crossings South II, LLC; Medford Crossings North Development Assoc., LCC; Medford Crossings North II, LLC; Medford Crossings Restaurants, LLC; Christopher Conlon; Todd Cooper; Peter T. Ripka; and Ripco Ventures, Inc., and any Persons sharing the profits of Debtor, FC Medford Residential LLC, or any of the above entities.

(Dkt. No. 333 at § 1.67.)

[4] After this appeal was filed, Appellees filed a Third Amended Disclosure Statement and Plan of Reorganization (Dkt. No. 418), which contains the same third party release and injunction provisions as the Second Amended Plan.

After a hearing on July 30, 2008, the Bankruptcy Court issued an order denying Appellants' challenge to its jurisdiction. The Bankruptcy Court held that it had "jurisdiction over, and to consider, the Debtors' proposed Plan of Reorganization and Disclosure Statement and the contents therein." (Dkt. No. 380.) The Bankruptcy Court first determined that the summary dispute resolution procedure agreed to by the parties to the state court litigation did not deprive the Bankruptcy Court of jurisdiction to consider the Debtors' proposed Plan. Second, the Bankruptcy Court determined that the remand of the state court litigation did not deprive the Court of jurisdiction to consider the Plan. Third, the Bankruptcy Court found that neither the <u>Rooker-Feldman</u> doctrine nor the doctrine of collateral estoppel precluded the Bankruptcy Court from considering the Plan. (Dkt. No. 367 at 5-10.) Appellants filed a notice of appeal from the Bankruptcy Court on September 26, 2008. Appellees seek dismissal of the appeal, claiming that this Court lacks jurisdiction over the appeal and that Samost does not have standing to appeal the Bankruptcy Court's order.

## II.  MOTION TO DISMISS THE APPEAL

### A.  This Court's Jurisdiction

The first issue this Court must address is its own jurisdiction over the appeal from the Bankruptcy Court's decision denying Appellants' challenge to its jurisdiction. Appellants argue that this Court has jurisdiction under 28 U.S.C. § 158(a) and under the collateral order doctrine. The Court finds that it has jurisdiction under 28 U.S.C. § 158(a), and therefore it is not necessary to reach the issue of whether jurisdiction exists under the collateral order doctrine.

Section 158(a) states in relevant part that United States District Courts have jurisdiction over appeals from final orders issued by bankruptcy courts. 28 U.S.C. § 158(a)(1)(2006). When

determining whether a Bankruptcy Court's order is final, courts generally take a pragmatic approach. In Re Brown, 916 F.2d 120, 123 (3d Cir. 1990). Using this pragmatic approach, the Third Circuit Court of Appeals has held that "an order denying a motion to dismiss a Chapter 11 proceeding is a final order within 28 U.S.C. § 158(a)." Id. at 124; see also In re B.S. Livingston & Co., 186 B.R. 841, 850 (D.N.J. 1995) (finding Bankruptcy Court's order denying summary judgment motion and motion to dismiss for lack of subject matter jurisdiction was final under § 158(a)). The Brown court relied on In re Christian, where the court explained

> If the order here [affirming the denial of a motion to dismiss] is not now appealable the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place. We do not view such a resolution as either desirable or practical. . . . [W]e therefore conclude that the district court's order in this case is a final order under § 158(d).

Brown, 916 F.2d at 123 (quoting In re Christian, 804 F.2d 46, 48 (3d Cir. 1986)). In Brown, the court found that if a District Court order affirming a Bankruptcy Court's denial of a motion to dismiss was final, the Bankruptcy Court's order was also final. Id. at 124. In light of Brown, this Court finds that the Bankruptcy Court's order denying Appellants' challenge to its jurisdiction was final under 28 U.S.C. § 158(a) and that this Court has jurisdiction over the appeal.[5] While this case may be factually distinguishable from the cases cited by Appellants, the Court is not persuaded that these factual distinctions render inapplicable the Third Circuit Court of Appeals' reasoning in Brown and Christian.

---

[5] Appellees argue that "a plethora of cases" state that the denial of a motion to dismiss for lack of jurisdiction is not a final order. Appellees cite a Fifth Circuit Court of Appeals opinion in support of this argument. See In the matter of Greene City Hospital, 835 F.2d 589, 596 (5th Cir. 1988). While most Circuit Courts of Appeals that have addressed the issue have held that denial of a motion to dismiss is not a final order, the Third Circuit Court of Appeals has maintained a different position. See In re American Capital Equipment, LLC, 296 F. App'x 270, 277 (3d Cir. 2008) (Jordan, J., concurring in the judgment). This Court is bound by Third Circuit precedent.

7

### B. Standing

Appellees argue that Samost does not have standing to appeal the Bankruptcy Court's order because he is not aggrieved by it. Even if Samost lacks standing, the appeal should not be dismissed on that basis, as long as MVE has standing.[6] See Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264 n.9 (1977) (noting that because one plaintiff had standing to appeal, Court need not consider whether other plaintiffs had standing).

The Court finds that MVE has standing to appeal the Bankruptcy Court's order, and therefore will not dismiss the appeal on the basis of lack of standing. In order to have standing to appeal a Bankruptcy Court's order, a person must be "aggrieved" by the order. In re Dykes, 10 F.3d 184, 187 (3d Cir. 1993). A person is aggrieved if his "rights or interests are 'directly and adversely affected pecuniarily'" by the order. Id. (quoting In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983)). More specifically, persons are aggrieved "if the order diminishes their property, increases their burdens, or impairs their rights." In re Dykes, 10 F.3d at 187. Here, MVE's rights with respect to its claims against the Third Party Releasees are affected by the Bankruptcy Court's order, and therefore MVE is aggrieved by it.

### III. The Appeal: Jurisdiction of the Bankruptcy Court

### A. Standard of Review

A District Court reviewing a decision of a Bankruptcy Court "review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir.

---

[6] Appellants also seek a determination that Samost has no standing in any future appeal of the Bankruptcy Court's jurisdiction order. The Court declines to make this determination, which would be an advisory opinion.

1999). Whether the Bankruptcy Court has jurisdiction is an issue of law and is considered by this Court de novo. In re Resorts Int'l, Inc., 372 F.3d 154, 160 (3d Cir. 2004).

### B. Discussion

Appellants seek a determination of whether the Bankruptcy Court has jurisdiction to consider and to approve the Debtors' proposed Plan of Reorganization, in light of the Third Party Releases and Injunction contained in the proposed Plan. However, the Bankruptcy Court's finding that it had jurisdiction was limited. The Bankruptcy Court did not find that it had jurisdiction to approve every provision of this particular Plan or the Third Party Releases and Injunction in particular. Rather, the Bankruptcy Court determined that it had "jurisdiction over, and to consider" the Plan. (Dkt. No. 380.) In other words, the Bankruptcy Court determined that it could "consider and possibly confirm, after the appropriate hearing and process, a plan of reorganization filed by the debtor." (Dkt. No. 367 at 6-7.) The Bankruptcy Court specifically noted that the Plan "may not be confirmable," and found that the Appellants' objections to specific aspects of the Plan were "a confirmation issue" that "the Court [would] undertake to decide within the realm of the confirmation process." (Id. at 9.)

This Court agrees with the Bankruptcy Court's conclusion regarding its jurisdiction to consider the proposed Plan. In general, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1). Confirmation of a Plan of Reorganization is a "core proceeding." 28 U.S.C. § 157(b)(2)(L), and therefore the Bankruptcy Court has jurisdiction to consider the Debtors' proposed Plan.

Appellants raise five main arguments as to why the Bankruptcy Court lacks jurisdiction

9

over the proposed Plan. They argue that (1) the Bankruptcy Court lacks "related to" jurisdiction over the claims affected by the Third Party Releases and Injunction, and therefore lacks jurisdiction over the Plan (Reply Brief at 6-13); (2) the parties are bound by the alternative dispute resolution provisions, and confirmation of the Plan would improperly deny enforcement of these provisions; (3) each order of the state court was, by agreement, final, and therefore the Bankruptcy Court's consideration of the Third Party Releases and Injunction is barred by the Rooker-Feldman doctrine, the doctrine of collateral estoppel, and the entire controversy doctrine; (4) because the Bankruptcy Court remanded the Litigation to state court, it retained no jurisdiction over the matters in dispute (Brief of Appellants at 29-30); and (5) the Debtors are barred by judicial estoppel, promissory estoppel and equitable estoppel from advancing positions in the Bankruptcy Court that are contrary to the positions they advanced in the state court (Brief of Appellants at 38-39). Appellants further argue that even if the Bankruptcy Court has jurisdiction to consider the Plan, the Third Party Releases and Injunction are not approvable for a variety of reasons; these arguments are not relevant to the only issue before the Court on appeal: whether the Bankruptcy Court has jurisdiction to consider the Plan.

**1. "Related to" Jurisdiction over Claims Affected by Release and Injunction**

Appellants first argue that in order to approve a third party release or injunction, the Bankruptcy Court must have "related to" jurisdiction over the claims affected, and the Bankruptcy Court in this case does not have such jurisdiction. Appellants rely primarily upon In re Combusion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004), where the Court of Appeals for the Third Circuit examined "related to" jurisdiction in the context of a third party injunction. However, the Combustion Engineering court examined the Bankruptcy Court's jurisdiction to

issue a third party injunction after the Bankruptcy Court had approved the injunction. See id. at 200. Here, by contrast, the Bankruptcy Court has merely determined that it has jurisdiction to consider the proposed Plan, which includes third party releases and an injunction. During the confirmation process, the Bankruptcy Court may ultimately determine that it cannot approve certain provisions of the Plan; this Court, however, will not make that determination for the Bankruptcy Court at this stage of the process.

### 2. Summary Dispute Resolution Procedures

Appellants argue that the summary dispute resolution procedures and non-appealability provisions are binding on the parties and therefore that the Bankruptcy Court does not have jurisdiction to resolve any disputes between the parties. In support of this argument, Appellants cite In re Mintze, 434 F.3d 222 (3d Cir. 2006). In Mintze, a debtor, after filing for bankruptcy, filed a complaint in the Bankruptcy Court seeking to enforce a pre-petition rescission of a mortgage. Id. at 225-26. The lender then filed a motion to compel arbitration, based on an arbitration provision in the loan agreement. Id. at 226-27. The Bankruptcy Court denied this motion, and the lender appealed. Id. at 227. The Court of Appeals found that "the Bankruptcy Court lacked the authority and the discretion to deny enforcement of the arbitration provision in the contract" because the Federal Arbitration Act "mandates enforcement of arbitration when applicable unless Congressional intent to the contrary is established." Id. at 233.

As the Bankruptcy Court recognized, this case is distinguishable from Mintze. First, this case does not involve an arbitration provision. Second, the debtor in Mintze was seeking to litigate issues that were the subject of the arbitration provision, while the debtors in this case are not seeking to litigate issues that were the subject of the summary dispute resolution procedures.

Rather, the debtors in this case are seeking to confirm a Plan of Reorganization. In this Plan, they are seeking to avoid litigation. Finally, in contrast to Mintze, where there was no bankruptcy issue to be decided before the Bankruptcy Court, see id. at 231, here the issue before the Bankruptcy Court was the confirmation of a Plan, which is a bankruptcy issue.

The other cases cited by Appellants do not address the effect of an agreement providing for alternative dispute resolution on the jurisdiction of a Bankruptcy Court to consider a Plan of Reorganization. See Baker Industries, Inc. v. Cerberus Ltd., 764 F.2d 204 (3d Cir. 1985) (affirming award of award of attorneys' fees under 28 U.S.C. § 1927 where litigant filed objections to finding of referee after stipulating that referee's decisions would not be appealable); Goel v. Heller, 667 F. Supp. 144 (D.N.J. 1987) (granting motions for summary judgment based on res judicata); Van Duren v. Rzasa-Ormes, 926 A.2d 372 (N.J. Super. Ct. App. Div. 2007) (finding non-appealability clause in arbitration agreement was enforceable), aff'd, 948 A.2d 1285 (2008). In sum, the Court finds that the summary dispute resolution procedures and non-appealability provisions relating to the state court litigation do not deprive the Bankruptcy Court of jurisdiction to consider the Debtors' proposed Plan.

### 3. Rooker-Feldman, Collateral Estoppel, and Entire Controversy

Appellants argue that the Bankruptcy Court lacks jurisdiction to consider the Plan based on the Rooker-Feldman doctrine, the doctrine of collateral estoppel, and the New Jersey Entire Controversy Doctrine. "The Rooker-Feldman doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (citations omitted). "[A] claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal

12

action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Id.  The doctrine "is confined to cases . . . brought by state-court losers complaining of . . . state court judgments rendered before the [federal] proceedings commenced and inviting [federal court] review and rejection of those judgments." Id. at 580 n.15 (quoting Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

> Collateral estoppel precludes a party from relitigating an issue where
>
> the party asserting the bar ... show[s] that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Hennessey v. Winslow Twp., 875 A.2d 240, 243-44 (N.J. 2005) (quoting In Re Estate of Dawson, 641 A.2d 1026 (1994)) (internal citations omitted).

While collateral estoppel applies only to matters that have been litigated in a prior proceeding, the entire controversy doctrine applies "to all aspects of a controversy that *might* have been thus litigated and determined." Mori v. Hartz Mountain Development Corp., 472 A.2d 150, 155 (N.J. Super. Ct. App. Div. 1983).  "The entire controversy doctrine requires the assertion of all claims arising from a single controversy in a single action at the risk of being precluded from asserting them in the future." In re Estate of Gabrellian, 859 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2004) (citing N.J.R. 4:30A; Prevratil v. Mohr, 678 A.2d 243, 248 (N.J. 1996)).

Here, the parties disagree as to whether any of the state court orders was final for

13

purposes of either the Rooker-Feldman doctrine or the doctrine of collateral estoppel. Appellants argue that by virtue of the agreement between the parties, every order of the judge in the state court litigation was final. Regardless of whether any of the state court orders was final, the Court finds that neither the Rooker-Feldman doctrine nor the collateral estoppel doctrine bars the Bankruptcy Court from reviewing the Debtors' proposed Plan. The Debtors do not seek to re-litigate in Bankruptcy Court issues addressed by the state court. Rather, they seek to abandon the project and forgo litigation related to it. Moreover, Appellants fail to cite any case in which a court has found that collateral estoppel or Rooker-Feldman bars a Bankruptcy Court from considering a Plan of Reorganization. Appellants argue that the orders in the state court litigation limit the Bankruptcy Court's ability to determine the value of the Debtors' assets. However, the Bankruptcy Court addressed this concern by stating that if any issues arise during the confirmation process that fall within the scope of the state court's prior rulings, the Bankruptcy Court will defer to the state court judge on those issues. (See Dkt. No. 367 at 11-12.)

Nor does the Entire Controversy doctrine prevent the Bankruptcy Court from considering the Debtors' proposed Plan. Again, Debtors are not asserting claims against Appellants; rather they seek confirmation of a Plan in which they will forgo litigation.

### 4. Effect of Remand

Appellants also argue that because the Bankruptcy Court remanded the state court litigation, it lacks jurisdiction to consider a Plan containing the Third Party Releases and Injunction. However, as the Court has previously stated, the issue before the Bankruptcy Court was its jurisdiction to consider a Plan of Reorganization. As the Bankruptcy Court concluded, it did not, and could not have remanded its jurisdiction to consider the Plan to the state court.

Further, the Bankruptcy Court has expressed its intention to defer to the state court judge if any matters arise during the confirmation process that are within the scope of the issues the parties have agreed will be decided by the state court.  In sum, the remand of the state court litigation is not a reason to completely bar the Bankruptcy Court from reviewing the Debtors' Plan.

### 5. Judicial Estoppel, Promissory Estoppel and Equitable Estoppel

Finally, Appellants argue that pursuant to the doctrines of judicial estoppel, promissory estoppel and equitable estoppel, the Debtors may not advance any position in the Bankruptcy Court that is contrary to the positions they adopted in state court.  Appellants further argue that various parts of the Debtors' plan are at odds with positions taken by the Debtors in state court.  Appellants fail to discuss the elements of each theory they cite and how the elements are met in this case.  Thus, appellants fail to show how any of these theories divests the Bankruptcy Court of jurisdiction to consider the Debtors' Plan.  If Appellants believe that any of these doctrines prevents Debtors from including certain provisions in their Plan, they should make their objections known during the confirmation process.

## IV.  CONCLUSION

For the foregoing reasons, Appellees' motion to dismiss the appeal is denied, and the Opinion and Order of the Bankruptcy Court regarding the jurisdiction of the Bankruptcy Court is affirmed.  An accompanying order shall issue today.


Dated:   6-15-09                                                                /s/ Robert B. Kugler
                                                                                            ROBERT B. KUGLER
                                                                                            United States District Judge